# In the United States Court of Federal Claims

No. 11-530
(Filed Under Seal: August 2, 2012)
(Reissued for Publication: August 15, 2012)[*]
TO BE PUBLISHED

| | |
|---|---|
| STANDARD COMMUNICATIONS, INC., | |
| Plaintiff, | Rule 54 of the Rules of the Court of Federal Claims; Equal Access to Justice Act, 28 U.S.C. § 2412; taxable costs, 28 U.S.C. § 1920; motion for attorney's fees and expenses; Bill of Costs; government's position was substantially justified. |
| v. | |
| THE UNITED STATES, | |
| Defendant. | |

Isaias "Cy" Alba, IV, PilieroMazza PLLC, Washington, D.C., for plaintiff. Pamela Mazza, Patrick T. Rothwell, Kathryn V. Flood, PilieroMazza PLLC, Washington, D.C., of counsel.

Anuj Vohra, Trial Attorney, Christopher L. Krafchek, Trial Attorney, Kirk T. Manhardt, Assistant Director, Jeanne E. Davidson, Director, Commercial Litigation Branch, Stuart F. Delery, Acting Assistant Attorney General, Civil Division, U.S. Department of Justice, Washington, D.C., for defendant.

---

[*] This Opinion and Order was filed under seal on August 2, 2012 (docket entry 84). The parties were given an opportunity to advise the Court of their views with respect to unsealing the Opinion and Order as well as the underlying briefs. Plaintiff filed a Notice of Proposed Redactions on August 10, 2012 (docket entry 86) in which it opposed unsealing the Opinion and Order, Plaintiff's Memorandum in Support of Its Motion for Attorney's Fees and Other Costs Pursuant to the Equal Access to Justice Act (docket entry 79, Feb. 8, 2012), and Defendant's Opposition to Plaintiff's Application for the Award of Fees and Other Expenses Pursuant to the Equal Access to Justice Act (docket entry 82, Mar. 30, 2012). Plaintiff did not object to unsealing its Bill of Costs (docket entry 78, Feb. 8, 2012) or its Reply to Defendant's Opposition to Its Application for Attorney's Fees and Other Costs Pursuant to the Equal Access to Justice Act (docket entry 83, Apr. 13, 2012). Plaintiff proposed redactions and explained its reasons therefor. Plaintiff represented that defendant had no "objections to the unsealing of the Court's August 2, 2012 Opinion and Order [or] the underlying briefs." Notice of Proposed Redactions 4. The Court has reviewed plaintiff's proposed redactions and has concluded that they should be rejected.

# **OPINION AND ORDER**

<u>GEORGE W. MILLER</u>, Judge

      On February 8, 2012, plaintiff, Standard Communications, Inc. ("Standard"), filed a Bill of Costs (docket entry 78) requesting $12,640.00[1] and a motion for attorney's fees requesting $100,216.22 in fees and other expenses (docket entry 79) pursuant to Rule 54(d) of the Rules of the United States Court of Federal Claims ("RCFC") and the Equal Access to Justice Act

---

      "There exists a 'presumption of public access to judicial records,' and the court 'must balance the privacy interests of the parties against the public interest in access to the . . . information.'" *Joint Venture of Comint Sys. Corp. v. United States*, 102 Fed. Cl. 235, 235 n.\* (2011) (alteration in original) (quoting *Baystate Techs., Inc. v. Bowers*, 283 F. App'x 808, 810 (Fed. Cir. 2008)); *accord Diaz-Laboy v. United States*, No. 10-751 C, 2012 WL 1139749, at \*10–11 (Fed. Cl. Jan. 9, 2012); *PlanetSpace, Inc. v. United States*, 92 Fed. Cl. 520, 520 n.\* (2010). Specifically, "the public has an interest in ensuring that the law is fairly and coherently developed 'so that all claimants can have notice of the standards for judging a case.'" *Diaz-Laboy*, 2012 WL 1139749, at \*10 (quoting *Castagna v. Sec'y of Health & Human Servs.*, No. 99-411V, 2011 WL 4348135, at \*14 (Fed. Cl. Aug. 25, 2011) (special master decision)). This interest extends to materials considered by the court in making its decision on the matter in controversy. *Id.*

      The Court finds that the nature of the information plaintiff seeks to redact in this EAJA proceeding does not outweigh the public interest in accessing unredacted versions of the documents at issue. To submit an application for attorney's fees pursuant to the Equal Access to Justice Act, the prevailing party is statutorily required to provide certain information, specifically information relating to its status as a prevailing party and the total amount of fees and expenses sought. *See* 28 U.S.C. § 2412(d). Additionally, plaintiff's original submissions contained heavy redactions in some areas, presumably to protect information it deemed proprietary. *See, e.g.*, Pl.'s Mem. in Supp. of its Mot. for Att'y's Fees & Other Costs Pursuant to the Equal Access to Justice Act, Ex. C. Accordingly, the public interest in access to judicial records outweighs plaintiff's interest in keeping the proposed redacted information confidential. *See PlanetSpace, Inc.*, 92 Fed. Cl. at 520 n.\*. As a result, the Court is reissuing for publication its Opinion and Order dated August 2, 2012 without redactions and directs the Clerk's office to unseal docket entries 78, 79, 82, and 83.

[1] On Form 4, Bill of Costs, plaintiff requested $12,640.00. Pl.'s Bill of Costs 1. However, plaintiff references $3,250.66 as the total amount it seeks in its supporting memorandum, which appears to consist of plaintiff's overtime, PACER, courier, travel, and filing costs. *See* Pl.'s Mem. in Supp. of Pl.'s Bill of Costs 2. The Court assumes that plaintiff intended to seek $12,640.00 in costs, as it indicated in the "Total" line item in Form 4 and in elsewhere in its memorandum.

("EAJA"), 28 U.S.C. § 2412.[2]  Plaintiff seeks an award as a result of the Court's November 9, 2011 decision partially granting plaintiff's motion for judgment on the administrative record and ordering tailored injunctive relief.  *Standard Commc'ns, Inc. v. United States*, 101 Fed. Cl. 723, 745 (2011).  Defendant, United States, filed a response to plaintiff's motions on March 30, 2012 (docket entry 82), and plaintiff filed a reply in support of its motion on April 13, 2012 (docket entry 83).  For the reasons set forth below, the Court **DENIES** plaintiff's application for fees and expenses and **GRANTS IN PART** and **DENIES IN PART** plaintiff's request for costs.

**I.      Background**[3]

Plaintiff is a privately held, Service-Disabled Veteran-Owned Small Business ("SDVOSB") that "provid[es] telecommunications integration, support services and financial systems support exclusively" to the Government.  *Standard Commc'ns, Inc.*, 101 Fed. Cl. at 726 (alteration in original) (quoting Administrative R. ("AR") Tab 23, at 33422) (internal quotation marks omitted).  Plaintiff submitted a proposal in response to the Department of Veterans Affairs ("DVA") Request for Proposals ("Solicitation") for its Transformation Twenty-One Total Technology ("T4") Program.  *Id.*  Plaintiff was not awarded a contract, and it filed a post-award bid protest in the United States Court of Federal Claims.  *Id.* at 726–27, 730–31.  On November 9, 2011, this Court granted in part plaintiff's motion for judgment on the administrative record and ordered tailored injunctive relief in favor of plaintiff.  *See id.* at 745–46.  As a result of the Court's Opinion and Order, plaintiff now requests $100,216.22 in attorney's fees and expenses and, in the alternative, $12,640.00 in costs.

   *A.      DVA's Solicitation for the T4 Program*

On July 26, 2010, DVA issued a Solicitation for its T4 program, which sought proposals for "a total IT services solution encompassing, but not limited to software and IT products incidental to the solution, in conjunction with all services needed to integrate a system, network, or other IT service in order to meet [DVA's] mission requirements."  *Id.* at 727 (alteration in original) (quoting AR Tab 3, at 163) (internal quotation marks omitted).  The Solicitation guaranteed that at least four contracts would be awarded to SDVOSBs, like plaintiff, and at least three to Veteran-Owned Small Businesses ("VOSB").  *Id.*  The Solicitation set forth five factors that would be used in evaluating an offeror's proposal: (1) technical, (2) past performance, (3) veterans involvement, (4) small business participation commitment, and (5) price.  The technical factor was considered the most important factor, and "criteria one through four were viewed as 'significantly more important' than criterion five, price."  *Id.* (quoting AR Tab 3, at 250).  "The Solicitation explained that [a]ny awards to be made [would] be based on the best

---

[2] RCFC 54(d)(1) provides that costs, other than attorney's fees, should be awarded to a prevailing party to the extent permitted by 28 U.S.C. § 2412(a).  RCFC 54(d)(2) allows a party to move for attorney's fees and expenses.  *See* 28 U.S.C. § 2412(d)(1)(A).

[3] For a complete recitation of the facts of the underlying case, see *Standard Communications, Inc.*, 101 Fed. Cl. at 726–31.  Three defendant-intervenors participated in the underlying action, none of whom is involved in the application for fees and expenses.

overall (i.e., best value) proposals that are determined to be the most beneficial to the Government." *Id.* (first alteration in original) (quoting AR Tab 3, at 250) (internal quotation marks omitted).

On August 31, 2010, plaintiff submitted a timely proposal in response to DVA's Solicitation for the T4 Program. *Id.* at 729. DVA preliminarily evaluated the 107 proposals it received in response to the T4 Solicitation and determined that plaintiff's was within the initial competitive range. *Id.* After receiving offerors' responses to Items for Negotiations, DVA eliminated one offeror from further consideration and established the final competitive range, which included plaintiff. *Id.* (citing AR Tab 204, at 79112).

To carry out the Solicitation's guarantee that contracts would be awarded to at least four SDVOSBs and three VOSBs, DVA established a two-step evaluation process. *Id.* at 727. In the first step, DVA assessed the proposals and made awards in the competitive range without regard to the offerors' size or status as an SDVOSB or VOSB. *Id.* (citing AR Tab 3, at 250). At this step, DVA selected nine awardees and plaintiff was not among them. *Id.* at 729. Because DVA's step-one selection process did not result in awards to the guaranteed number of SDVOSBs and VOSBs (only one SDVOSB concern was selected), DVA evaluated the remaining proposals in a second step. *Id.* Eight SDVOSB/VOSB entities, including plaintiff, remained. *Id.* After the step-two evaluation was completed, six awardees were selected. *Id.* Plaintiff did not receive an award. *Id.*

Initially, the Source Selection Authority ("SSA") discussed plaintiff's proposal twice in its tradeoff analysis, specifically with regard to step two. *Id.* First, she compared plaintiff's proposal to the proposals of three other SDVOSB/VOSB concerns and concluded that, although the four proposals were "essentially equal in technical quality," the proposals submitted by the three other offerors "represent[ed] a better overall value to the Government" because they were lower in price. *Id.* (alteration in original) (quoting AR Tab 280, at 83099) (internal quotation marks omitted). Second, she compared plaintiff's proposal to three other offerors and determined that plaintiff's more expensive proposal did "not exhibit sufficient superiority in the non-Price factors to warrant award." *Id.* at 729–30 (quoting AR Tab 270, at 83100) (internal quotation marks omitted).

Thereafter, DVA discovered that one of the step-two awardees did not qualify as an SDVOSB or VOSB concern and was ineligible to receive an award. *Id.* at 730. Consequently, DVA needed to make an additional award to one of the remaining SDVOSB/VOSB offerors in the competitive range, which included plaintiff and one other. *Id.* In her tradeoff analysis, the SSA determined that, although plaintiff's proposal was technically superior, it was more expensive and "[did] not exhibit sufficient superiority in the non-Price factors to warrant an award." *Id.* (alteration in original) (quoting AR Tab 280, at 83102) (internal quotation marks omitted). The SSA thus awarded the final contract to the other offeror that remained in the competitive range. *Id.*

B.   *Plaintiff's Post-Award Bid Protest*

On August 24, 2011, plaintiff filed a complaint against the United States alleging that DVA improperly evaluated its proposal for the T4 Program and, in so doing, acted in a manner

4

that was arbitrary, capricious, an abuse of discretion, and in violation of the Federal Acquisition Regulation ("FAR") and the Solicitation. *Id.* at 726, 730. As relief, plaintiff requested that the Court issue an injunction against performance of the T4 contract or the contracts awarded in step two, require DVA to award a contract to plaintiff, or instruct DVA to reevaluate revised proposals and make new award determinations. *Id.* at 743.

In its opinion and order, the Court rejected nearly all of plaintiff's allegations. However, the Court concluded that DVA failed to conduct proper best-value analyses with respect to plaintiff. *Id.* at 735–38. Under FAR, "[a] tradeoff process is appropriate when it may be in the best interest of the Government to consider award to other than the lowest priced offeror or other than the highest technically rated offeror." FAR 15.101–1(a); *see Standard Commc'ns Inc.*, 101 Fed. Cl. at 733. When conducting the tradeoff analysis, an SSA is required to comparatively assess the proposals and sufficiently document "the rationale for any business judgments and tradeoffs made or relied on . . . , including benefits associated with additional costs," but "need not quantify the tradeoffs that led to the decision." FAR 15.308; *see Standard Commc'ns Inc.*, 101 Fed. Cl. at 733. To meet the documentation requirements of FAR, "the [Source Selection Decision] must contain more than conclusory and generalized statements." *Standard Commc'ns Inc.*, 101 Fed. Cl. at 735 (citing *Serco Inc. v. United States*, 81 Fed. Cl. 463, 497 (2008)).

As previously noted, in the second step of the evaluation the SSA reasoned that, although plaintiff's proposal was technically superior to three other proposals, it was more expensive and did "not exhibit sufficient superiority in the non-Price factors to warrant an award." *Id.* at 730 (quoting AR Tab 280, at 83100) (internal quotation marks omitted). In the underlying case, plaintiff alleged that the SSA's conclusions were insufficiently documented. *Id.* at 733. Defendant responded that FAR only requires explanatory documentation when a higher-priced proposal is selected over lower-priced proposals, and that the SSA's statement satisfied FAR's requirements. *Id.* at 736. The Court was not persuaded by defendant's argument. Rather, it found that the documentation of the agency's tradeoff analysis was not in compliance with FAR because FAR 15.308 requires agencies to document their "reasoning for declining to pay a premium for a higher-priced, technically superior proposal, particularly in a situation where, as here, the non-price factors were said to be more important than price," and the documentation DVA provided in this case was not adequate. *Id.* at 736–37. Moreover, the Court found similar documentary flaws in the SSA's best-value tradeoff analysis involving plaintiff and the final offeror when it was required to make an additional step-two award. *Id.* at 737–38. Thus, the Court partially granted plaintiff's motion for judgment on the administrative record and concluded that "plaintiff was prejudiced by DVA's failure to follow applicable regulations in documenting and explaining two best-value tradeoff analyses involving plaintiff." *Id.* at 745.

Accordingly, the Court held that plaintiff was entitled to tailored injunctive relief and ordered DVA to conduct a new best-value tradeoff analysis that complied with FAR. *Id.* If plaintiff was not awarded a contract after DVA conducted this best-value tradeoff analysis, the Court ordered DVA to conduct a new best-value tradeoff analysis of plaintiff's proposal and the proposal of the offeror remaining in the competitive range after the non-SDVOSB/VOSB concern was eliminated as an awardee. *Id.* If, after completion of either of these best-value tradeoff analyses, plaintiff's proposal was found to represent the best value to the Government, the Court ordered DVA to "not make an award to any entity other than plaintiff provided DVA finds plaintiff to be a responsible offeror." *Id.* Defendant represents that, pursuant to that order,

DVA conducted another best-value tradeoff and concluded that the technical strength of plaintiff's proposal did not warrant its significantly higher price. Def.'s Opp'n to Pl.'s Appl. for Award of Fees and Other Expenses Pursuant to Equal Access to Justice Act ("Def.'s Opp'n") 7 n.2.

### C. Present Proceedings

Plaintiff filed its request for costs and attorney's fees and other expenses on February 8, 2012. *See generally* Pl.'s Bill of Costs; Pl.'s Mem. in Supp. of its Mot. for Atty's Fees and Other Costs Pursuant to the Equal Access to Justice Act ("Pl.'s EAJA Mot."). Plaintiff seeks an award of attorney's fees and expenses in the amount of $100,216.22, Pl.'s EAJA Mot. 2, and, in the alternative, costs in the amount of $12,640.00, Mem. in Supp. of Pl.'s Bill of Costs ("Pl.'s Bill of Costs Mem.") 2. Plaintiff asserts that it is eligible for an award of costs, attorney's fees, and other expenses pursuant to 28 U.S.C. § 2412(a) and (d). *See* Pl.'s EAJA Mot. 4–5; Pl.'s Bill of Costs Mem. 2.

## II. Jurisdiction

The EAJA provides the Court of Federal Claims with the authority to award costs, in addition to attorney's fees and other expenses, in actions over which it has jurisdiction. 28 U.S.C. § 2412(a)(1) ("[A] judgment for costs, as enumerated in section 1920 of this title, but not including the fees and expenses of attorneys, may be awarded to the prevailing party in any civil action brought by or against the United States . . . *in any court having jurisdiction of such action*." (emphasis added)); *id.* § 2412(d)(1) ("[A] court shall award to a prevailing party . . . fees and other expenses, in addition to any costs awarded pursuant to [§ 2412(a)], incurred by that party in any civil action (other than cases sounding in tort) . . . brought by or against the United States *in any court having jurisdiction of that action* . . . ." (emphasis added)); *see Burkhardt v. Gober*, 232 F.3d 1363, 1367 (Fed. Cir. 2000). Here, the Court has jurisdiction over plaintiff's EAJA application and its Bill of Costs because it properly had jurisdiction over the underlying action. *See id.* § 1491(b)(1) ("[T]he Unite[d] States Court of Federal Claims . . . shall have jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement."); *see generally Standard Commc'ns Inc.*, 101 Fed. Cl. 723. Therefore, the Court of Federal Claims has jurisdiction over plaintiff's motion for attorney's fees and expenses and its Bill of Costs.

## III. Plaintiff's EAJA Motion for Attorney's Fees and Expenses

The EAJA is a fee-shifting statute that provides eligible parties the ability to recover attorney's fees and expenses incurred in civil actions by or against the Government. *Davis v. Nicholson*, 975 F.3d 1360, 1363 (Fed. Cir. 2007). In order to award fees and expenses under the EAJA, the Court must find that (1) the plaintiff was a prevailing party, (2) the Government's position was not "substantially justified"; (3) there exist no special circumstances that would make an award unjust; and (4) the fee application was submitted within thirty days after the entry of a final and unappealable judgment in the underlying action and was supported by an itemized statement. 28 U.S.C. § 2412(d)(1)(A)–(B); *see Comm'r, Immigration & Naturalization Serv. v.*

6

*Jean*, 496 U.S. 154, 158 (1990); *Greenhill v. United States*, 96 Fed. Cl. 771, 775 (2011).  If plaintiff was a prevailing party and timely submits a proper application, it is entitled to fees and expenses, unless the Government's position was substantially justified or special circumstances exist that make an award unjust.  *Thompson v. Shinseki*, 682 F.3d 1377, 1380 (Fed. Cir. 2012); *Patrick v. Shinseki*, 668 F.3d 1325, 1330 (Fed. Cir. 2011).  "The [G]overnment bears the burden of establishing that its position was substantially justified." *Patrick*, 668 F.3d at 1330 (citing *Doty v. United States*, 71 F.3d 384, 385 (Fed. Cir. 1995)).

> A.   *Plaintiff's Filing Meets the EAJA's Timing and Documentation Requirements*

As an initial matter, motions for fees and expenses pursuant to the EAJA must be timely submitted within thirty days after the entry of a final and unappealable judgment and be supported by an itemized statement.  *See* 28 U.S.C. § 2412(d)(1)(B); *see also Impresa Construzioni Geom. Domenico Garufi v. United States*, 531 F.3d 1367, 1369 (Fed. Cir. 2008).  The filing period under the EAJA begins when a final decision by the court in which the action was brought is no longer appealable.  *Melkonyan v. Sullivan*, 501 U.S. 89, 96 (1991).  Plaintiff's application under the EAJA was timely filed within thirty days after the entry of a final and unappealable judgment and includes an itemized accounting of the fees and costs as required.

> B.   *Plaintiff Is a Prevailing Party*

A plaintiff is a prevailing party if it is granted some relief on the merits of its claim regardless of the amount of damages awarded.  *See Astrue v. Ratliff*, 130 S. Ct. 2521, 2525 (2010); *Davis*, 475 F.3d at 1363; *Neal & Co. v. United States*, 121 F.3d 683, 685 (Fed. Cir. 1997).  A prevailing party must meet certain size and financial eligibility requirements to recover fees under the EAJA.  *See* 28 U.S.C. § 2412(d)(2)(B).  A corporation is eligible to receive fees and expenses under the EAJA if, at the time the action was filed, it had not more than five hundred employees and had a net worth not exceeding $7 million.  *Id.*; *Al Ghanim Combined Grp. Co. Gen. Trad. & Cont. W.L.L. v. United States*, 67 Fed. Cl. 494, 498 (2005) ("To qualify as a prevailing party, plaintiff must satisfy the eligibility requirements of both net worth and number of employees." (quoting *Lion Raisins, Inc. v. United States*, 57 Fed. Cl. 505, 511 (2003)) (internal quotation marks omitted)).

Plaintiff contends that it is a prevailing party because it successfully litigated its claim that DVA failed to adequately document two of its best-value analyses as required by FAR 15.308.  Pl.'s EAJA Mot. 4–5; *see also Standard Commc'ns, Inc.*, 101 Fed. Cl. at 744.  Moreover, plaintiff states that it is a corporation that did not employ more than 500 people and its net worth did not exceed $7 million as of August 24, 2011, the day the bid protest was filed.  Pl.'s EAJA Mot. 5; *see id.* Ex. B, at 1–11 (affidavit of president of plaintiff corporation and balance sheet).  Defendant concedes that plaintiff is a prevailing party for EAJA purposes.  Def.'s Opp'n 3.[4]

---

[4] Although the EAJA requires that a party's net worth not exceed $7 million on the date of filing, and plaintiff attests to such, the balance sheet accompanying plaintiff's EAJA application only provides plaintiff's financial information as of July 31, 2011, which was three weeks prior to the date of filing.  *See* Pl.'s EAJA Mot. Ex. B, at 3–11.  An applicant must submit evidence that

### C.     The Government's Position Was Substantially Justified

Plaintiff, as a prevailing party, is entitled to fees and expenses under the EAJA. *Thompson*, 682 F.3d at 1380; *Patrick*, 668 F.3d at 1330.  However, "the Government may defeat this entitlement by showing that its position in the underlying litigation 'was substantially justified.'"  *Scarborough v. Principi*, 541 U.S. 401, 405 (2004) (quoting 28 U.S.C. § 2412(d)(1)(A)); *see Padgett v. Shinseki*, 643 F.3d 950, 953 (Fed. Cir. 2011).  The Government's position is "substantially (i.e. for the most part) justified if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact."  *Pierce v. Underwood*, 487 U.S. 552, 566 n.2 (1988).  That the Court found for plaintiff does not dictate whether the government's position was substantially justified.  *Id.* at 569 ("[T]he fact that one other court agreed or disagreed with the Government does not establish whether its position was substantially justified."); *Info. Scis. Corp. v. United States*, 86 Fed. Cl. 269, 284 ("Failure to prevail on the merits . . . does not automatically mean the Government's position was not substantially justified."), *amended on denial of reconsideration by* 88 Fed. Cl. 626 (2009).  Rather, determining whether defendant's position is substantially justified, and has a reasonable basis in law and fact, is determined case by case by looking to the record.  *See Impresa Construzioni Geom. Domenico Garufi v. United States*, 100 Fed. Cl. 750, 760 (2011) (citing *CEMS, Inc. v. United States*, 65 Fed. Cl. 473, 476 (2005)).  The determination of substantial justification, or the lack thereof, is within the discretion of the court.  *Chiu v. United States*, 948 F.2d 711, 715 n.4 (Fed. Cir. 1991) (citing *Pierce*, 487 U.S. at 557–63).

The Government's "position" that must be substantially justified encompasses the entirety of its conduct, including agency-level action and litigation.  28 U.S.C. § 2412(d)(2)(D) ("'[P]osition of the United States' means, in addition to the position taken by the United States in the civil action, the action or failure to act by the agency upon which the civil action is based."); *see Blakely v. United States*, 593 F.3d 1337, 1341 (Fed. Cir. 2010); *Doty*, 71 F.3d. at 386; *see also Manno v. United States*, 48 Fed. Cl. 587, 590 (2001) ("When evaluating whether the Government has met its burden, the court . . . examines the entirety of the Government's conduct and makes a single finding as to whether the Government's position was substantially justified.").  The Court's substantial justification analysis will focus on the Government's position relevant to the issue on which plaintiff prevailed.  *Smith v. Principi*, 343 F.3d 1358, 1363 (Fed. Cir. 2003) ("[T]he court's inquiry must focus on the circumstances pertinent to the position taken by the [G]overnment on the issue on which the claimant prevailed . . . .").

With respect to the agency's failure to document the best-value tradeoff analyses, defendant argues that its position was substantially justified.  It states that "[t]he Government's success upon the vast majority of allegations raised by Standard clearly demonstrates that [its] 'overall position' in this litigation had a reasonable basis in law and fact, and was therefore

---

permits the court to determine its net worth at the time the complaint was filed.  *See Asphalt Supply & Serv.*, 75 Fed. Cl. 598, 601 (2007); *Al Ghanim Combined Grp. Co. Gen. Trad. & Cont. W.L.L.*, 67 Fed. Cl. at 496–97.  In any event, the nature of plaintiff's EAJA submissions ultimately makes no difference in the outcome of this case as the Court denies plaintiff's EAJA application in its entirety.  *See infra* Part III.D; *see also Watterson Constr. Co. v. United States*, No. 10-587C, 2012 WL 3089909, at *3–5 (Fed. Cl. July 31, 2012).

substantially justified." Def.'s Opp'n 5. Defendant distinguishes the errors in the procurement that this Court identified as not relating to "the *substance* of the analysis that the VA conducted, which Standard alleged was 'flawed,' but the *documentation* of the VA's decisions to award to certain lower-priced offerors." *Id.* at 7. Defendant argues that its position was substantially justified because DVA's "interpretation of the FAR's documentation requirements was a reasonable interpretation of the applicable language" of FAR 15.308. *Id.* at 6. Defendant explains that its interpretation was "based upon [its] reasonable understanding that, because [FAR 15.308] only specifically references documenting benefits associated with higher-priced proposals, the decision to award to a lower-priced offeror allowed for less extensive justifying documentation." *Id.* at 8.

In response, plaintiff highlights the SSA's failure to adequately explain why plaintiff's proposal did not warrant its higher price. Pl.'s EAJA Mot. 5–6. Specifically, plaintiff contends that, because DVA failed to adequately document and justify the best-value determinations that resulted in plaintiff's non-selection for award in violation of FAR 15.308, the Government cannot rightly claim that it was substantially justified in defending the agency's action. *Id.* Plaintiff contends that "an agency's violation of a regulation creates an *ipso facto* inference that the violation was unreasonable." Pl.'s Reply to Def.'s Opp'n to Application for Att'y's Fees and Other Costs Pursuant to Equal Access to Justice Act ("Pl.'s Reply") 5 (citing *Info. Scis. Corp.*, 88 Fed. Cl. at 629).

"The [G]overnment can establish that its position was substantially justified if it demonstrates that it adopted a reasonable, albeit incorrect, interpretation of a particular statute or *regulation*." *Patrick*, 668 F.3d at 1330 (emphasis added); *cf. Trahan v. Brady*, 907 F.2d 1215, 1220 (D.C. Cir. 1990) ("Undoubtedly, there will be instances in which an agency might take a position about its own statute or regulation, which, while incorrect, might appear correct to a reasonable person."); *RAMCOR Servs. Grp., Inc. v. United States*, 41 Fed. Cl. 264, 270–72 (1998) (finding the Government's position substantially justified when the Government defended an agency's failure to provide an adequate writing in support of its decision to override an automatic stay under 31 U.S.C. § 3553(c)), *aff'd*, 185 F.3d 1286 (Fed. Cir. 1999).[5] "Where,

---

[5] In *Information Sciences Corp.*, the Court of Federal Claims decided that an agency's violation of a regulation is not reasonable and, therefore, the Government cannot be substantially justified for purposes of the EAJA. 86 Fed. Cl. at 284–86. The court so found in the context of a motion for fees following a bid protest wherein the Government defended actions of an agency that violated FAR 15.308 and the evaluative terms of the solicitation at issue. *Id.* Specifically, the court found that the relevant agency "violated FAR 15.101 and FAR 15.308 by failing to assign adjectival ratings and improperly according equal weight to price and non-price factors contrary to the Solicitation's requirements." *Id.* at 275.

On reconsideration, the court elaborated on its decision that a violation of a regulation is not reasonable: "'Reasonable agency action' does not violate the law. Therefore, if an agency violates the law, the agency is not acting in a reasonable manner." *Info. Scis. Corp.*, 88 Fed. Cl. at 632. However, the court recognized that the underlying case did not involve the "*interpretation* of a regulation," *id.* at 631 (emphasis added), whereas the underlying case here involved precisely this—the agency's (incorrect) interpretation and subsequent violation of FAR

however, the [G]overnment interprets a statute in a manner that is contrary to its plain language and unsupported by its legislative history, it will prove difficult to establish substantial justification." *Patrick*, 668 F.3d at 1330–31.

In this case the Court must determine whether the agency's erroneous interpretation of a regulation, FAR 15.308, was reasonable and whether it was reasonable for the Government to defend DVA's interpretation. Here, the Court found that DVA wrongly interpreted FAR 15.308 and that, as a result, the SSA did not sufficiently document her best-value tradeoff analysis in violation of the regulation. *Standard Commc'ns Inc.*, 101 Fed. Cl. at 735–38. However, DVA's interpretation of FAR 15.308—that it was only required to provide explanatory documentation when a higher-priced proposal is selected over a lower priced proposal—is not unreasonable. *See id.* at 736 ("Defendant is partially correct in its reading of FAR 15.308—when selecting a proposal that involves 'additional cost,' the rationale for the decision must be documented."). Although DVA overlooked the qualifying term "including," *id.*, its position at the agency level and before this Court did not clearly offend the history of FAR 15.308, its plain language, *see Patrick*, 668 F.3d at 1330–31, or established precedent, *see Washington v. Heckler*, 756 F.2d 959, 962 (3d Cir. 1985) ("When the [G]overnment's legal position clearly offends established precedent, however, its position cannot be said to be 'substantially justified.'"). Accordingly, the Court finds that a reasonable person could have interpreted the regulation as did DVA. *See Pierce*, 487 U.S. at 566 n.2.

Furthermore, the agency's errors do not relate to the substance of DVA's best-value analyses. *See Serco, Inc.*, 81 Fed. Cl. at 498 ("[I]t is conceivable that the SSA, in his own mind, made such cost/benefit comparisons, but merely failed to capture them on paper . . . . [T]hat too would violate the FAR and its documentation requirements."); *RAMCOR Servs. Grp., Inc.*, 41 Fed. Cl. at 270–72. In fact, the Court found that, because DVA failed to provide sufficient documentation, it could not "determine whether the SSA engaged in an appropriate best-value tradeoff analysis." *Standard Commc'ns Inc.*, 101 Fed. Cl. at 737. This is distinguishable from the court's decision in *Information Sciences Corp.*, in which the court focused on the impropriety of the agency's tradeoff analysis itself, finding that the analysis constituted a violation of both FAR and the stated terms of the solicitation. 86 Fed. Cl. at 284–86. Here, the Court could not determine the propriety of the analyses because they were not adequately documented as a result of the agency's erroneous interpretation of the regulation.

Accordingly, it was reasonable, albeit incorrect, for DVA to believe it was in compliance with FAR when it conducted and documented its tradeoff analyses. It was also reasonable for the Government to defend the agency's position during litigation. Therefore, the Court finds that defendant's position was substantially justified.

---

15.308, *see also id.* ("In this case, the dispositive issue was whether [the agency's] action violated FAR regulations, not whether the agency's interpretation of the FAR regulations at issue was reasonable.").

> D.  *The Court Need Not Determine Whether Special Circumstances Exist that Would Make an Award Unjust*

Because the Court finds that defendant was substantially justified in its position, the Court need not reach whether special circumstances exist that would make an award unjust. *See* 28 U.S.C. § 2412(d)(1)(A). In fact, defendant did not explicitly refute plaintiff's contention that no special circumstances exist nor did it allege the presence of any special circumstances that would make an award unjust. *See Taucher v. Brown-Hruska*, 396 F.3d 1168, 1173 (D.C. Cir. 2005) ("[T]he government has the burden of showing that . . . special circumstances make an award unjust." (citing *Air Transp. Ass'n of Can. v. Fed. Aviation Admin.*, 156 F.3d 1329, 1332 (D.C. Cir. 1998))).

In view of the foregoing, defendant has carried its burden to show that its position was substantially justified. Accordingly, plaintiff is not entitled to fees or expenses under the EAJA.

## IV.  Plaintiff's Bill of Costs

On February 8, 2012, plaintiff filed a Bill of Costs and accompanying memorandum requesting $12,640.00 in costs in the alternative to its EAJA motion. Pl.'s Bill of Costs Mem. 2. A prevailing party[6] in a suit against the Government may recover costs incurred in the litigation, other than attorney's fees, to the extent permitted under 28 U.S.C. § 1920 by filing a Bill of Costs with the Clerk of the Court. 28 U.S.C. § 2412(a)(1); *see* RCFC 54(d)(1). Section 1920 sets forth the following taxable court costs:

> (1) Fees of the clerk and marshal; (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) Docket fees under section 1923 of this title; (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.

These costs are to be awarded without regard to whether the Government's position in the litigation was substantially justified because § 2412(a) requires only that a party be a "prevailing party." A judge or clerk of the court may tax costs only if the costs are allowable and if they are both reasonable and necessary. *Soler v. Waite*, 989 F.2d 251, 255 (7th Cir. 1993); *Cook v. United States*, No. 98-525, 2005 WL 6142352, at *1 (Fed. Cl. Feb. 14, 2005) (citing *Soler*, 989

---

[6] The size and financial eligibility requirements of a prevailing party relevant to an application for fees and expenses under the EAJA, *see supra* Part III.B, are not relevant to a party's Bill of Costs. A party seeking an award of costs under § 2412(a) meets the definition of "prevailing party," and is thus entitled to costs, if it has been granted some relief on the merits. *See Neal & Co.*, 121 F.3d at 685.

F.2d at 255). The requesting party has the burden of establishing that the requested costs are taxable and is obligated to provide clear documentation that allows the court to determine whether the costs were reasonable and necessary to the litigation. *In re Ricoh Co.*, 661 F.3d 1361, 1368 (Fed. Cir. 2011); *Cook*, 2005 WL 6142352, at *1. "A list of costs and expenses must be adequately detailed, identifying the purpose of each expenditure and not 'filled with generic references . . . .'" *In re Ricoh Co.*, 661 F.3d at 1368 (citation omitted) (quoting *Fabi Constr. Co. v. Sec'y of Labor*, 541 F.3d 407, 414 (D.C. Cir. 2008)) (citing *English v. Colo. Dep't of Corr.*, 248 F.3d 1002, 1013 (10th Cir. 2001)).

Furthermore, a Bill of Costs must (1) be filed within thirty days after the entry of a final and unappealable judgment, (2) be accompanied by an affidavit and memorandum setting forth the grounds that support reimbursement of costs, and (3) include documentation relevant to the costs requested. RCFC 54(d)(1)(B). A defendant may object to some or all of a plaintiff's requested costs.[7] RCFC 54(d)(1)(C)(i).

Plaintiff requests reimbursement for the following expenses in connection with this litigation: fees of the clerk ($350.00), copier costs ($1,771.16), facsimile costs ($147.09), telephone costs ($37.09), PACER fees ($27.36), courier costs ($45.15), travel costs ($68.15), overtime fees ($2,760.00), and paralegal/law clerk fees ($7,434.00). Pl.'s Bill of Costs Mem. 2; *id.* Ex. B, at 1.

### A. *Plaintiff's Fees of the Clerk Are Taxable*

Pursuant to 28 U.S.C. § 1920(1), the Court may tax as costs the filing fee paid to the Clerk of the Court. Accordingly, $350.00 should be taxed as costs in favor of plaintiff and against defendant.

### B. *Plaintiff's Photocopying Costs Are Not Taxable*

In order to tax plaintiff's photocopying costs against the Government, the Court must determine whether these expenses were both reasonable and necessary to the litigation. *See* 28 U.S.C. § 1920(4); *Soler*, 989 F.2d at 255; *Cook*, 2005 WL 6142352, at *1. Copying costs are limited to "copies necessarily obtained for use in the case," 28 U.S.C. § 1920(4), which include "those costs incurred for copies of documents prepared for the court's consideration or for the opposing party." *Vistein v. Am. Registry of Radiologic Technologists*, No. 1:05 CV 2441, 2010 WL 918081, at *8 (N.D. Ohio Mar. 10, 2010) (quoting *Pion v. Liberty Dairy Co.*, 922 F. Supp. 48, 53 (W.D. Mich. 1996)) (internal quotation marks omitted). Copies that are for the convenience of the attorneys, such as multiple copies of documents, are not taxable. *Monelus v. Tocodrian, Inc.*, 609 F. Supp. 2d 1328, 1335 (S.D. Fla. 2009); *Rice v. Sunrise Express, Inc.*, 237

---

[7] It is unclear whether defendant has objected to any or all of plaintiff's costs contained in its Bill of Costs. Defendant states in a footnote that "Standard did not itemize the $12,640.00 identified in its Bill of Costs" and makes no other identifiable references to plaintiff's Bill of Costs. Def.'s Opp'n 11 n.3. In any event, the Court has considered the propriety of the taxable costs identified by plaintiff.

F. Supp. 2d 962, 980 (N.D. Ind. 2002) (citing *Haroco, Inc. v. Am. Nat'l Bank & Trust Co. of Chi.*, 38 F.3d 1429, 1441 (7th Cir. 1994)).

The moving party "must not only show that the costs claimed are recoverable, but must also provide sufficient detail and sufficient documentation regarding those costs in order to permit challenges by opposing counsel and meaningful review by the Court." *Vistein*, 2010 WL 918081, at *4 (citing *Lee v. Am. Eagle Airlines, Inc.*, 93 F. Supp. 2d 1322, 1335 (S.D. Fla. 2000)). "As the prevailing party alone knows the purpose of the copies, it cannot simply make unsubstantiated claims that copies of the documents were necessary." *Monelus*, 609 F. Supp. 2d at 1335 (citing *Helms v. Wal–Mart Stores, Inc.*, 808 F. Supp. 1568, 1570 (N.D. Ga. 1992)). "The absence of entries describing what documents were photocopied, and for what purpose, prohibits the Court from weighing in on the necessity of the photocopying and exemplification charges." *Freedom Mortg. Corp. v. Burnham Mortg., Inc.*, No. 03 C 6508, 2008 WL 4534162, at *1 (N.D. Ill. Oct. 3, 2008).

Here, the contents and use of the photocopies for which plaintiff seeks costs are unknown because plaintiff failed to provide adequate documentation to demonstrate the nature and purpose of the copies. *See* Pl.'s Bill of Costs Mem. Ex. B. Simply, plaintiff did not provide information that would allow the Court to ascertain whether the requested costs are reimbursable. Accordingly, the Court cannot award plaintiff its requested photocopying costs.

    C.     *Plaintiff's Remaining Costs Are Not Taxable*

Plaintiff's other requested costs are not reimbursable under 28 U.S.C. § 2412(a) because they are not specifically authorized by the language of § 1920. Section 1920 only contains six categories of taxable costs, and courts cannot award costs outside the specific categories set forth in the statute. *See* 28 U.S.C. § 1920; *Taniguchi v. Kan Pac. Saipan, Ltd.*, 132 S. Ct. 1997, 2001–02 (2012) (noting the narrow scope of taxable costs authorized by 28 U.S.C. § 1920); *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987) (holding that "absent explicit statutory or contractual authorization . . . federal courts are bound by the limitations set out in 28 U.S.C. § 1821 and § 1920"), *superseded by statute on other grounds*, Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1071 (codified at 42 U.S.C. § 1988(c)); *Summit Tech., Inc. v. Nidek Co.*, 435 F.3d 1371, 1374 (Fed. Cir. 2006) (stating that a court's discretion is limited to awarding costs that are within the scope of § 1920). Although this court has "awarded administrative expenses and costs such as the 'recovery of copying, delivery services, travel, research services, telephone, and postage costs, as well as other expenses routinely incurred by attorneys, assuming they are documented and reasonably necessary to prosecution of the claim,'" such expenses were awarded pursuant to § 2412(d)(1)(A), not §§ 2412(a) and 1920. *Hopi Tribe v. United States*, 55 Fed. Cl. 81, 100 (2002) (citing *R.C. Constr. Co. v. United States*, 42 Fed. Cl. 57, 63–64 (1998)); *see Neal & Co.*, 121 F.3d at 686 ("Read together, sections 2412(a)(1) and 2412(d)(1)(A) clearly treat costs differently from fees. These provisions create a distinct, though not unreasonable, trade-off."); *Bennett v. Dep't of the Navy*, 699 F.2d 1140, 1143–44 (Fed. Cir. 1983) ("It . . . seems evident that when Congress enacted the EAJA it considered costs and attorney fees to be distinct concepts, and that costs and expenses are not synonymous but are words of art."). Therefore, the requested charges for "overtime fees" and "Paralegal/Law Clerk Fees," *see* Pl.'s Bill of Costs Mem. 2, cannot be awarded because they are not taxable costs recognized by § 1920.

Moreover, the requested charges for courier, mail, telephone, and facsimile costs are not taxable. *See* 28 U.S.C. § 1920; *S & L Oil, Inc. v. Zurich Am. Ins. Co.*, No. 07-CV-01883-MCE-KJM, 2010 WL 490902, at *1 (E.D. Cal. Feb. 5, 2010) ("Communications charges like courier, mail, telephone, telex and fax costs cannot be taxed." (citing *El-Fadl v. Cent. Bank of Jordan*, 163 F.R.D. 389, 390 (D.D.C. 1995))). Likewise, the court cannot tax costs associated with PACER or electronic research. *See Huntsville Golf Dev., Inc. v. Brindley Constr. Co.*, No. 1-08-00006, 2011 WL 4960421, at *4 (M.D. Tenn. Oct. 18, 2011) (noting that PACER charges are not taxable under § 1920); *Doria v. Class Action Servs., LLC*, 261 F.R.D. 678, 686 (S.D. Fla. 2009) (stating that costs for general copying, computerized legal research, PACER, and in-house and outsourced photocopies, among other costs, are not recoverable under § 1920); *Freedom Mortg. Corp.*, 2008 WL 4534162, at *1 ("[C]omputerized research costs are attorney's fees and not recoverable under a bill of costs."). Nor can the court award costs for taxi fares. *Merigan v. Liberty Life Assurance Co. of Bos.*, No. 2009-11087-RBC, 2012 WL 859593, at *2 (D. Mass. Mar. 15, 2012) ("The requested costs for messenger service, airfare, parking and taxis do not fall within the strictures of § 1920 and, accordingly, may not be recouped as costs of the action."). Therefore, the Court concludes that § 1920 does not permit the Court to award plaintiff its remaining requested costs.

## CONCLUSION

For the reasons set forth above, plaintiff's motion for attorney's fees and expenses pursuant to the EAJA is **DENIED**. Plaintiff's Bill of Costs is **GRANTED IN PART** and **DENIED IN PART**. The Clerk is directed to tax costs in the amount of $350.00 in favor of plaintiff and against defendant.

This Opinion and Order is being filed under seal. The Court has taken this step because the parties to this application for fees and expenses filed their briefs under seal. *See* docket entries 78, 79, 82, and 83. The Court **ORDERS** the Government and Standard Communications, Inc., to file by **Friday, August 10, 2012**, a joint status report stating whether either of them objects to the unsealing of this Opinion and Order and of the briefs identified above prior to publication of this Opinion and Order. The basis for any such objection shall be stated with specificity in the joint status report.

**IT IS SO ORDERED.**

                                        s/ George W. Miller
                                        GEORGE W. MILLER
                                             Judge